1  Jason Hartley, CA Bar No. 192514
   **STUEVE SIEGEL HANSON LLP**
2  500 West C Street, Suite 1750
   San Diego, California 92101
3  Telephone: 619-400-5822
   Facsimile: 619-400-5832
4  Email: hartley@stuevesiegel.com
5  Attorney for Plaintiff

6  (*Additional Counsel on Signature Page*)

7              **IN THE UNITED STATES DISTRICT COURT**
8          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
                    **WESTERN DIVISION**
9
   | | |
   |---|---|
   | **TINH TO,** | Case No. |
   | **Plaintiff,** | **COMPLAINT** |
   | **v.** | **1. Violation of FLSA** |
   | | (29 U.S.C. §201 *et seq.*) |
   | **DIRECTV, LLC,** | **2. Failure to Pay Overtime Premium and for All Hours Worked** |
   | **Defendant.** | (Cal. Labor Code §§1194, 510) |
   | | **3. Failure to Pay Minimum Wage** (Cal. Labor Code §§1194, 1197, 1197.1, & 1199) |
   | | **4. Unlawful Wage Deductions, Collection From Wages (Chargebacks)** |
   | | (Cal. Labor Code §§221, 225, 225.5) |
   | | **5. Failure to Furnish Wage Statements** |
   | | (Cal. Labor Code §§226, 1174, 1175) |
   | | **6. Failure to Reimburse Necessary Business Expenses** |
   | | (Cal. Labor Code §§2802, 226.8) |
   | | **7. Failure to Pay Wages Due on Resignation** |
   | | (Cal. Labor Code §§202, 203, 204) |
   | | **8. Unfair Business Practices** |
   | | (Cal. Bus. & Prof. Code §17200, et seq.) |
   | | **DEMAND FOR JURY TRIAL** |

COMPLAINT

**COMPLAINT**

Plaintiff Tinh To, by and through his undersigned counsel, for his complaint against DIRECTV, LLC ("DIRECTV") hereby states as follows:

**NATURE OF SUIT**

1.     DIRECTV—the largest provider of satellite television services in the United States—is responsible for a far reaching and unlawful "fissured employment"[1] scheme.  To expand and service its customer base (topping more than 20 million domestic subscribers), DIRECTV has engaged tens of thousands of technicians—including Plaintiff—to install and repair its satellite systems. Although DIRECTV requires these technicians (just like DIRECTV's own acknowledged W-2 technician employees) to drive a DIRECTV-branded vehicle, wear a DIRECTV uniform, and perform their work according to DIRECTV's exacting policies and procedures, DIRECTV disclaims any legal relationship with these workers, and instead misclassifies them as some other kind of worker to avoid providing them the benefits and protections to which "employees" are entitled under the law. [2]  This action squarely challenges this deceitful practice, for

---

[1] Fissured employment describes the practice of a large company attempting to shed its role as a direct employer and purporting to disassociate itself from the workers responsible for its products (albeit maintaining tight control over the method, manner, quantity, and quality of production). The practice of outsourcing an employer's responsibilities and obligations to subordinate entities and subcontractors is highly profitable for companies like DIRECTV, but results in stagnation of wages and benefits and causes rampant violations of wage-and-hour laws. *See e.g.*, David Weil, *The Fissured Workplace: Why Work Became So Bad for So Many and What Can Be Done to Improve It* (Harvard Univ. Press, Feb. 3, 2014);  David Weil, *Enforcing Labour Standards in Fissured Workplaces: The US Experience*, 22 Econ. & Lab. Rel. Rev. 2, at 33-54 (July 2011).

[2] "The misclassification of employees as something else, such as independent contractors, presents a serious problem, as these employees often are denied access to critical benefits and protections—such as family and medical leave, overtime compensation, minimum wage pay and Unemployment Insurance—to which they

it is the economic reality of the relationship—not DIRECTV's self-serving labels—that controls whether Plaintiff meets the definition (among the broadest ever legislated) of an "employee" under the Fair Labor Standards Act ("FLSA") and relevant state law.

2. Fissured employment schemes are not a novel concept. In fact, the U.S. Department of Labor ("DOL") has made a priority of investigating and exposing them. *See* http://wage-hour.net/post/2012/09/25/Fissured-Industry-Enforcement-Efforts-Continue.aspx (last visited January 13, 2016). The DOL's "Misclassification Initiative" investigates and prosecutes companies that misclassify employees as "independent contractors," or some other kind of worker. It launched under Vice President Biden's Middle Class Task Force, and it is aggressively combating this pervasive issue in order to restore rights denied to individuals. In September 2011, then-Secretary of Labor Hilda L. Solis announced the signing of a Memorandum of Understanding between the DOL and the Internal Revenue Service (IRS), under which the agencies combine resources and share information to reduce the incidence of misclassification of employees, to help reduce the tax gap, and to improve compliance with federal labor laws. The DOL's Wage and Hour Division is also partnering with individual states, including California, whose workers are being subjected to this practice.[3]

---

are entitled. In addition, misclassification can create economic pressure for law-abiding business owners, who often struggle to compete with those who are skirting the law. Employee misclassification also generates substantial losses for state Unemployment Insurance and workers' compensation funds." *See* http://www.dol.gov/opa/media/press/whd/WHD20120257.htm (last visited Jan. 13, 2016); *see generally*, DOL Misclassification Initiative, available at http://www.dol.gov/whd/workers/misclassification/ (last visited Jan. 13, 2016).

[3] *See, e.g.*, DOL Misclassification Initiative, *available at* http://www.dol.gov/whd/workers/misclassification/#stateDetails (last visited Jan. 13, 2016).

COMPLAINT

1      3.    Plaintiff intends to prove in this litigation that he is legally employed
2    by DIRECTV and is entitled to the overtime, minimum wage, and other
3    protections of the FLSA and California law.

4                             **JURISDICTION AND VENUE**

5      4.    The FLSA authorizes court actions by private parties to recover
6    damages for violation of the FLSA's wage and hour provisions. Jurisdiction over
7    Plaintiff's individual FLSA claims is based on 29 U.S.C. § 216(b) and 28 U.S.C. §
8    1331.

9      5.    The California Labor Code and the California Unfair Competition
10   Law authorize court actions by private parties to recover damages for violation of
11   their provisions.  Jurisdiction over Plaintiff's state law claims is based upon 28
12   U.S.C. § 1367.

13      6.    Venue in this district is proper pursuant to 28 U.S.C. § 1391(b)
14   because a substantial part of the events giving rise to the claims alleged herein
15   occurred in this judicial district and DIRECTV is subject to personal jurisdiction in
16   this district. Further, upon information and belief, DIRECTV has consented to
17   personal jurisdiction and venue in the Central District of California for the claims
18   alleged herein.

19                              **PARTIES**

20      7.    Tinh To is an individual residing in Sacramento, California.

21      8.    DIRECTV, Inc. is a Delaware corporation with its principal place of
22   business in El Segundo, California. DIRECTV, Inc. does business as DIRECTV
23   Home Services in the State of California and nationwide. In December 2011,
24   DIRECTV, Inc. merged with another DIRECTV entity, DIRECTV Operations,
25   LLC. The resulting entity is known as DIRECTV, LLC, which is a Delaware
26   corporation with its principal place of business in El Segundo, California.  In May
27
28                                   4

2014, AT&T Inc. entered into an Agreement and Plan of Merger, in which DIRECTV will merge into and become a wholly owned subsidiary of AT&T Inc.

9.    DIRECTV does business or has done business in the State of California.

FACTUAL ALLEGATIONS

10.    At all relevant times, Plaintiff worked as a satellite television installation technician. Plaintiff's principal job duties were to install and repair DIRECTV satellite television service.

11.    DIRECTV was at all times relevant herein, in the business of, among other things, providing satellite television service to businesses and consumers. Installation and repair of satellite dishes, receivers, and related equipment is an integral part of DIRECTV's business.

12.    DIRECTV is engaged in interstate commerce and, upon information and belief, DIRECTV grosses more than Five Hundred Thousand Dollars in revenue per year.

**DIRECTV's Provider Network**

13.    DIRECTV controls and manages its nationwide corps of technicians in two ways: (1) by directly employing technicians ("W-2 Employees"); and (2) through an employment network of service providers (the "Provider Network") consisting of Home Service Providers ("HSPs" or "Providers"), subcontracting entities, and technicians.

14.    DIRECTV operates its Provider Network nationwide from its headquarters in El Segundo, California.

15.    Upon information and belief, at all relevant times, DIRECTV was the primary, if not the only, client of its HSPs and was the source of substantially all of each HSP's income.

5

16. During the relevant time period, and as alleged in more detail *infra*, many HSPs were subsumed by DIRECTV through a series of mergers and acquisitions.

17. By design, the Provider Network is organized and operated as a top-down structure: DIRECTV sits atop the Provider Network, controlling the employment network through contracts with HSPs; the HSPs, in turn, enter contracts with a patchwork of largely captive entities that DIRECTV generally refers to as subcontractors; and the subcontractors enter contracts with the technicians who install the satellite television equipment. In Plaintiff's case, DIRECTV contracted directly with the subcontracting entities, which contracted with technicians including Plaintiff.

18. No matter how employed, whether directly or as part of the Provider Network, each DIRECTV technician must install DIRECTV's satellite television equipment according to the same policies, procedures, practices, and performance standards as required by DIRECTV.

19. For those technicians like Plaintiff who work as part of the Provider Network, DIRECTV's policies, procedures, practices, performance standards, and payment method requirements are described, mandated, and imposed through "Services Provider Agreements" between DIRECTV and its subcontracting entities.

20. DIRECTV requires the technicians to perform their work as specified by the Services Provider Agreements.

21. The Services Provider Agreements enable DIRECTV to control nearly every facet of the technician's work, down to the "DIRECTV" shirts they are required to wear and the "DIRECTV" ID card they must show customers.

6

COMPLAINT

22.     The Services Provider Agreements contain exacting details concerning the manner in which technicians are to perform installations, down to the type of screws they must use.

23.     The Services Provider Agreements contain exacting "personal grooming standards" for technicians' appearance, which specify, among other things, hair color and the number and location of body piercings a technician may have.

24.     The Services Provider Agreements also mandate exclusivity, prohibiting subcontracting entities from performing services for DIRECTV's competitors.

25.     Through its Provider Network, as alleged in more detail below, DIRECTV controls the details of its technicians' day-to-day work including but not limited to control over what work its technicians (including Plaintiff) perform, where that work is performed, when that work is performed, and how that work is performed. DIRECTV also uses the Provider Network to control how technicians, including Plaintiff, were paid.

**DIRECTV's Workforce Consolidation: Acquisition of Providers**

26.     DIRECTV's control over its purportedly independent provider partners is integral to its fissured employment scheme. So much so that DIRECTV regularly infuses these partners with what it labels internally as "extraordinary advance payments" to keep these operations afloat while feigning an outward appearance of independence. When litigation or other circumstances make the "independent" relationship a negative for DIRECTV, DIRECTV simply absorbs these entities by acquisition.

27.     The absorption by DIRECTV is seamless, simply a resetting of titles without the functional modifications that normally accompany an arm's length

COMPLAINT

acquisition. To date, there are only three "independent" HSPs still in operation.[4] Since DIRECTV developed its HSP Network, DIRECTV or one of these three remaining HSPs has purchased at least thirteen prior HSPs.[5] Below is a description of the prior HSPs for which the Plaintiff technicians worked and how those HSPs were ultimately acquired by DIRECTV.

## DIRECTV Employs its Technicians, Including Plaintiff, Through Its Provider Network

28.     DIRECTV was at all times relevant herein, in the business of, among other things, providing satellite television service to businesses and consumers. Installation and repair of satellite dishes, receivers, and related equipment is an integral part of DIRECTV's business.

29.     Under the FLSA, an "employer" includes "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d), and an employee may be employed by more than one employer at the same time.

30.     Under the California Labor Code, an "employer" includes "any person . . . who directly or indirectly, or through an agent or any other person, employs or exercises control over the wages, hours, or working conditions of any person." IWC 4-2001(2)(H).

31.     DIRECTV exercises significant control over Plaintiff's daily work, including, but not limited to, control over what work Plaintiff performed, where that work was performed, when that work was performed, and how that work was

---

[4] These include DirectSat, MasTec, and Multiband.

[5] These include AeroSat, Bruister, Bluegrass Satellite and Security, ConnecTV, Directech NE, Directech SW, DTV Home Services II, LLC, Halsted Communications, Ironwood Communications, JP&D Digital Satellite, Michigan Microtech, Mountain Satellite and Security, and Skylink.

COMPLAINT

performed. DIRECTV assigns each technician, including Plaintiff, a scope of work described in a Work Order that DIRECTV itself delivers to each technician via a centralized computer software system that DIRECTV controls.

32.     Each technician, including Plaintiff, is assigned a unique "Tech ID Number" by DIRECTV; every DIRECTV work order is assigned to a particular technician via their Tech ID Number.

33.     Plaintiff typically started his workdays after receiving daily work schedules from DIRECTV through DIRECTV's dispatching systems. DIRECTV used a database program known as Siebel to coordinate the assignment of particular work orders to technicians using each technician's unique "Tech ID Number."

34.     DIRECTV required Plaintiff to download and install onto his personal mobile phone an application called "DIRECTV RIO Wireless," through which DIRECTV sends him his work orders and coordinated his schedule for the work day and through which he was able to activate service when an installation was complete.  status during each job of the work day.

35.     DIRECTV mandates particularized methods and standards of installation to assure DIRECTV's equipment is installed according to the dictates of DIRECTV's policies and procedures.   As a consequence, each technician's essential job duties are virtually identical no matter where performed and no matter which intermediary the technician is ostensibly working for.

36.     After receiving his daily work schedule, Plaintiff typically called the customer contact for each of his assigned jobs to confirm the timeframe within which he expected to arrive at the customer's home. Plaintiff then traveled to his first assigned job and thereafter continued to complete the jobs assigned by DIRECTV in the prescribed order on the daily work schedule. Upon arriving at each job site, Plaintiff was required to check-in with DIRECTV via its dispatching

COMPLAINT

system. At the end of an assigned job, Plaintiff was required to report to DIRECTV that the installation was complete and, thereafter, worked directly with DIRECTV employees to activate the customer's service.

37.   When performing DIRECTV's work, Plaintiff was required to purchase and wear a uniform with DIRECTV insignia on it.

38.   The uniform displays only DIRECTV's name and logo. The uniform does not identify any subcontracting entity.

39.   Additionally, Plaintiff was required to display DIRECTV insignia on vehicles driven to customers' homes for installations.

40.   DIRECTV requires technicians, including Plaintiff, to hold themselves out as agents of DIRECTV.

41.   Plaintiff exclusively installed DIRECTV satellite television and not satellite television for any other provider.

42.   DIRECTV promulgates detailed instructions for how installations are to be completed. Plaintiff received these instructions and performed the work as DIRECTV required. By requiring that Plaintiff comply with DIRECTV's instructions, Plaintiff was forbidden to exercise meaningful discretion in how he performed installations.

43.   DIRECTV publishes training materials that technicians such as Plaintiff are required to review and which Plaintiff did review at monthly training meetings.

44.   DIRECTV requires that all technicians pass pre-screening and background checks, and obtain a certification from the Satellite Broadcasting & Communications Association ("SBCA") before that technician may be assigned DIRECTV work orders. This requirement allows DIRECTV to mandate certain training for all technicians.

COMPLAINT

45.     DIRECTV uses these requirements to control who is hired to install its systems.

46.     DIRECTV used a network of quality control personnel and field managers to monitor technicians' work, including Plaintiff's; used post-installation customer surveys to rate technicians' work as it related to customer experience, including Plaintiff's; measured technicians' work performance, including Plaintiff's, against metrics DIRECTV developed; and identified high and low-performing technicians.

47.     DIRECTV imposed chargebacks and/or rollbacks based on its reviews of Plaintiff's work.

48.     As described in detail above, DIRECTV, through its Siebel system, assigns detailed work schedules to Plaintiff. Through this system, DIRECTV effectively controls whether Plaintiff continues to perform its work, and can effectively terminate any technician, including Plaintiff, by simply ceasing to issue work orders to that technician.

49.     DIRECTV maintains within its Siebel system, a record of work schedules and work orders completed by its technicians, whether classified as 1099s or W-2 and including Plaintiff.

50.     DIRECTV maintains within its Siebel system a record of telephone numbers, trainings and certifications completed, and performance metrics, for all of its technicians, whether classified as 1099s or W-2 and including Plaintiff.

51.     Although DIRECTV controls nearly every aspect of the technicians' work, DIRECTV insists that many of its technicians, including Plaintiff, are not its employees, claiming that they are employees of other entities or are "independent contractors."

52.     DIRECTV does not provide Plaintiff with itemized wage statements, or ensure that such statements are provided to him.

COMPLAINT

53.    DIRECTV's policies and practices accomplish two, interrelated purposes: they ensure DIRECTV retains all necessary control over Plaintiff's work, while deliberately disclaiming his status as an employee under federal and state employment laws to avoid the responsibility of complying with the FLSA and the wage and hour requirements of California law.

54.    By imposing its policies and practices—to mask the economic realities of its employment relationship with Plaintiff—DIRECTV willfully fails to maintain traditional time records and other employment documentation.  And, as explained next, DIRECTV willfully fails to pay minimum wage for all hours worked and overtime compensation to Plaintiff.

**The Piece-Rate System: DIRECTV's Unlawful Payment Scheme**

55.    As with other aspects of Plaintiff's work, DIRECTV effectively controlled Plaintiff's compensation through the common policies and practices mandated in its Services Provider Agreements.

56.    Plaintiff was paid pursuant to the piece-rate payment scheme, under which Plaintiff was not paid for all hours that he worked.  Rather he was paid on a per-task (a/k/a/ piece rate) basis only for "satisfactorily" (as determined by DIRECTV) completing certain enumerated "productive" tasks that DIRECTV listed on a standardized rate card.

57.    There was no contract, memorandum, or other document between Plaintiff and DIRECTV properly memorializing or explaining this pay system.

58.    In addition to the certain tasks DIRECTV designated as compensable, Plaintiff performed other work each week during the relevant time period for DIRECTV, such as assembling satellite dishes, driving to and between job assignments, reviewing and receiving schedules, calling customers to confirm installations, obtaining required supplies, assisting other technicians with installations, contacting DIRECTV to report in or activate service, working on

12

1 installations that were not completed or cancelled, waiting between work orders,

2 and working on "rollback" installations where Plaintiff had to return and perform

3 additional work on installations previously completed.

4      59.    Plaintiff was not paid for these integral and indispensable tasks that

5 were necessary to his principal activity of installing and repairing DIRECTV

6 satellite television service, which means Plaintiff was not paid for all hours that he

7 worked.

8      60.    Furthermore, Plaintiff routinely worked more than forty hours per

9 week and more than eight hours in a day, but Plaintiff was not paid any overtime

10 premium.

11      61.    Moreover, the wages Plaintiff was paid were not paid free and clear.

12 Rather, Plaintiff was subjected to "chargebacks," i.e., deductions from his pay, if

13 there were issues with an installation, or questions from the customer, generally up

14 to 90 days after the customer's service was activated. The chargeback would occur

15 for a variety of reasons, nearly always at the direction of DIRECTV, and often for

16 reasons that were out of Plaintiff's control, including, for example, faulty

17 equipment, customer calls regarding how to operate their remote control, or a

18 customer's failure to give greater than a 95% satisfaction rating for the services

19 provided by the technician.

20      62.    In addition to chargebacks, Plaintiff was also required to purchase

21 supplies necessary to perform installations, such as screws, poles, concrete, cables,

22 fittings, connectors, and zip-ties.

23      63.    DIRECTV required Plaintiff use his own vehicle, affixed with

24 DIRECTV insignia, to perform DIRECTV's work.

25      64.    Plaintiff was also required to provide all maintenance and purchase all

26 the gas used—without reimbursements from DIRECTV—in the vehicle he drove

27 between DIRECTV customers' homes.

28

COMPLAINT

65.   Plaintiff must also use his personal smart phone to receive and review work orders, to "status" himself upon arriving at a job, to close a work order and to activate a customer's service.

66.   These required business expenses were incurred for DIRECTV's financial benefit yet reduced the wages of these technicians.

67.   The policy and practice of imposing "chargebacks," failing to compensate Plaintiff for all hours worked, and failing to reimburse Plaintiff's necessary business expenses resulted in Plaintiff routinely working overtime while being denied overtime pay and being subjected to an effective wage rate below that required by state law.

68.   Plaintiff intends to prove that DIRECTV's piece-rate pay system fails to comply with applicable law, constitutes an effort to deliberately deny Plaintiff his earned wages and overtime compensation in violation of the FLSA and the California Labor Code, and constitutes an unfair business practice under the California Business and Professions Code 17200 et seq., which entitles Plaintiff to restitution of wages due for a period of four years prior to the filing of his original claims.

## LITIGATION HISTORY

### *Lang v. DIRECTV*

69.   In a consent filed on July 9, 2012, Plaintiff previously opted-in to a conditionally certified FLSA action pending in the Eastern District of Louisiana styled *Lang v. DIRECTV*, Case No. 10-1085. The *Lang* case was pending as a collective action until the court, on September 3, 2013, granted the parties' joint motion decertifying the class, dismissed the opt-in plaintiffs' claims without prejudice to pursuing the individual claims raised herein, and ordered the statute of limitations for each opt-in plaintiff to continue to be tolled for 60 days from the

14

1  date of the order. *Lang v. DIRECTV*, Case No. 10-1085-NJB (E.D. La.) (Docs.
2  466, 466-1; Doc. 467, Order).

3         ***Addison v. DIRECTV***

4       70.    Within the 60 days granted by the *Lang* court, Plaintiff filed his
5  individual FLSA and California state law claims, along with the claims of other
6  individuals, in the Central District of California on November 1, 2013 (*Addison*,
7  Doc. 1), amended December 23, 2013 (*Addison*, Doc. 8). See *Addison et. al v.
8  DIRECTV et. al,* CV 13-8109 (C.D. Cal.).

9       71.    On January 4, 2016, the Court directed Plaintiff to file this separate
10  but related action for his claims. (*Addison*, Doc. 105).

11                **PLAINTIFF TINH TO'S CLAIMS**

12       72.    Plaintiff Tinh To is an individual residing in the State of California.

13       73.    Plaintiff worked for DIRECTV through two subcontracting entities
14  called Elite Communications and Satellite Services, LLC. Although Plaintiff was
15  treated as an independent contractor, under the FLSA and California law he was
16  employed by DIRECTV.

17       74.    In virtually every workweek between approximately 2008 and
18  November 2012, Plaintiff worked more than 40 hours per week as a technician for
19  DIRECTV in the State of California and was unlawfully deprived of overtime
20  compensation.[6]

21       75.    In fact, Plaintiff spent approximately 60 hours per week
22  (approximately 10 hours per day, 6 days per week) performing tasks for the benefit
23  of DIRECTV. Of those 60 hours, approximately 20 to 30 were spent working for
24  DIRECTV's benefit on tasks not assigned a piece rate and which were thus unpaid.

25  _____

26  [6] Exceptions to a typical workweek might include days in which work was not
performed, i.e., due to weather, a holiday, illness, or otherwise. Additionally, there
27  is a gap in Tinh To'semployment from approximately June 2010 to January 2011.

28

76.     DIRECTV's employment policies and practices detailed herein (*i.e.*, imposing "chargebacks" in varying amounts but often $80 to $90 each, failing to compensate Plaintiff for all hours worked, and failing to reimburse Plaintiff's necessary business expenses averaging  $730 per month) resulted in further unlawful reduction of Plaintiff's compensation.

77.     Plaintiff voluntarily resigned from his DIRECTV employment with Elite in about June 2010, and from Satellite Services in November 2012. At the time of Plaintiff's resignation, or within 72 hours thereafter, he was not paid all the wages he was owed and to this date has not received all the wages he is owed.

78.     Plaintiff does not have all the documents or records possessed by DIRECTV that bear on his damages. Based on his recollection, Plaintiff estimates that, in a given workweek, he would work 60 hours, 25 hours of which were unpaid; he would be subject to chargebacks of $85 per week; would be paid $700 to $900 per week, which was reduced by unreimbursed business expenses of approximately $170 per week.

79.     Plaintiff brings his claims against DIRECTV.

## COUNT I

### Violation of the Fair Labor Standards Act of 1938

(29 U.S.C. §§ 201, *et seq.*)

80.     Plaintiff re-alleges all allegations set forth above.

81.     At all times material herein, Plaintiff has been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq.*

82.     The FLSA regulates, among other things, the payment of overtime pay by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. § 207(a)(1).

COMPLAINT

83.   DIRECTV is subject to the overtime pay requirements of the FLSA because it is an enterprise engaged in interstate commerce and its employees are engaged in commerce.

84.   The FLSA also regulates, among other things, the payment of minimum wage by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. § 206(a).

85.   DIRECTV is subject to the minimum wage and overtime pay requirements of the FLSA because it is an enterprise engaged in interstate commerce and its employees are engaged in commerce.

86.   DIRECTV violated the FLSA by failing to pay all minimum and overtime wages due to Plaintiff, failing to properly calculate Plaintiff's regular rate of pay for determining the overtime premium pay owed, and improperly deducting money from Plaintiff's pay.

87.   Plaintiff is entitled to damages equal to his unpaid wages and overtime premium pay within the three years preceding the filing of his consent to join form in the *Lang* litigation, August 9, 2012, plus periods of equitable tolling, because DIRECTV acted willfully and knew or showed reckless disregard in its violation of the FLSA.

88.   Pursuant to DIRECTV's policies and practices, DIRECTV willfully violated the FLSA by refusing and failing to pay Plaintiff in accord with the FLSA, including failure to pay for all time worked and a premium for hours worked over forty in a week. In the course of perpetrating these unlawful practices, DIRECTV willfully failed to keep accurate records of all hours worked by, compensation paid to, and expenses incurred by Plaintiff.

COMPLAINT

89.    DIRECTV's unlawful conduct was willful because, among other reasons described herein, DIRECTV and other members of the Provider Network knew, or should have known, that the fissured employment scheme utilized a piece-rate system(s) that unlawfully denied Plaintiff pay for all hours worked, overtime wages, and other employment benefits. Those systems have been challenged in numerous lawsuits around the country in which DIRECTV, as well as other HSP members of DIRECTV's Provider Network, have all been defendants.    Indeed DIRECTV recently settled a lawsuit brought the U.S. Department of Labor in the United States District Court for the Western District of Washington after that court granted summary judgment in favor of the DOL regarding DIRECTV's status as an employer of technicians like the Plaintiff herein. That action challenged DIRECTV's piece-rate compensation system, a system essentially identical to the system(s) being challenged in this case.

90.    DIRECTV has acted neither in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA. As a result thereof, Plaintiff is entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid wages as described by Section 16(b) of the FLSA, codified at 29 U.S.C. § 216(b). Alternatively, should the Court find DIRECTV acted in good faith in failing to pay Plaintiff all wages due under the FLSA, Plaintiff is entitled to an award of prejudgment interest at the applicable legal rate.

91.    As a result of these violations of the FLSA, compensation has been unlawfully withheld from Plaintiff by DIRECTV. Accordingly, pursuant to 29 U.S.C. § 216(b), DIRECTV is liable for the unpaid wages and overtime premium pay along with an additional amount as liquidated damages, post-judgment interest, reasonable attorneys' fees, and costs of this action.

**COUNT II**

COMPLAINT

**Failure to Pay Overtime Premium and for All Hours Worked**

(California Labor Code §§ 1194, 510)

92.     Plaintiff re-alleges the allegations set forth above.

93.     IWC Wage Order No. 4-2001 applies to Plaintiff's employment with DIRECTV, and no exemptions apply.

94.     Pursuant to the IWC Wage Order(s), including Wage Order 4-2001, DIRECTV is required to pay Plaintiff for all hours worked, meaning the time during which an employee is subject to the control of an employer, including all the time the employee is suffered or permitted to work, whether or not required to do so. Labor Code § 223 makes it unlawful for an employer to pay a lower wage than that required by statute while purporting to pay the wage required by statute.

95.     California Labor Code § 510 codifies the right to overtime compensation at one-and-one-half the regular rate of pay for hours worked in excess of 8 hours in one day, 40 hours in one week, or for the first 8 hours worked on the seventh day of work, and to overtime compensation at twice the regular rate of pay for hours worked in excess of 12 hours in a day or in excess of 8 hours in a day on the seventh day of work. California Labor Code § 1198 provides that it is unlawful to employ persons for longer than the hours set by the IWC without just compensation.

96.     As alleged herein, Plaintiff was paid piece-rate for specific tasks that he completed for DIRECTV. He was not compensated for other tasks he completed for DIRECTV's benefit. Moreover, Plaintiff was not compensated for all time worked during the continuous workday.

97.     DIRECTV, as a matter of company policy and procedure, consistently scheduled Plaintiff to work and/or required Plaintiff to work without paying straight time for each and every hour Plaintiff was under DIRECTV's control.

COMPLAINT

1     98.    As alleged herein, Plaintiff worked in excess of 8 and 12 hours in a

2   single day, in excess of 40 hours in a week and also worked in excess of 8 and 12

3   hours on the seventh day of work.

4     99.    DIRECTV failed to pay overtime compensation.

5     100.   In the course of perpetrating these unlawful practices, DIRECTV

6   willfully failed to keep accurate records of all hours worked by, compensation paid

7   to, and expenses incurred by Plaintiff.

8     101.   DIRECTV violated California law, in relevant part, by failing to

9   compensate Plaintiff for all hours worked including overtime wages as required by

10  California Labor Code §§ 204, 223, 510, 1194; 8 C.C.R. § 11040; and IWC Wage

11  Order 4-2001.

12    102.   DIRECTV's failure to pay for all hours worked including overtime

13  was willful. DIRECTV has acted neither in good faith nor with reasonable grounds

14  to believe that its actions and omissions were not a violation of California law.

15  DIRECTV's unlawful conduct was willful because, among other reasons described

16  herein, DIRECTV knew or should have known that Plaintiff was misclassified as

17  an independent contractor, that he was not being paid the required premium for all

18  overtime worked, and that its piece-rate system(s) violates California law.

19    103.   As a result of DIRECTV's violation of the California Labor Code and

20  applicable Wage Orders, Plaintiff has been damaged.

21    104.   For at least the three years preceding the filing of *Addison*, Plaintiff is

22  entitled to recover unpaid overtime wages in amounts to be proved at trial, plus

23  interest, attorneys' fees, and costs pursuant to California Labor Code § 218.6,

24  1194.

25    105.   Plaintiff requests all relief permitted by law.

26

27

28

COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## COUNT III

### Failure to Pay Minimum Wage

(Cal. Labor Code §§ 1194, 1197 & 1197.1)

106.   Plaintiff re-alleges the allegations set forth above.

107.   California Labor Code § 1197 provides that employers must pay at least the minimum hourly wage fixed by the Industrial Welfare Commission. IWC 4-2001(4)(B) provides that every employer shall pay to each employee not less than the applicable minimum wage for all hours worked, whether remuneration is measured by time, piece, commission, or otherwise.

108.   California law prescribes that it is an automatic minimum wage violation when an employer fails to compensate an employee for each and every hour worked. Employees paid on piece rate must be separately compensated for non-piece work; averaging wages over the workweek to meet minimum wage obligations is not permitted under the California Labor Code. *See Gonzalez v. Downtown L.A. Motors*, 215 Cal. App. 4th 36, 49-50 (2014).

109.   As alleged herein, DIRECTV's piece-rate compensation system fails to pay Plaintiff for all hours worked. Furthermore, DIRECTV's policy of imposing chargebacks to deduct wages already earned, and its policy of failing to indemnify or reimburse Plaintiff for his reasonable business expenses results in DIRECTV's failure to pay Plaintiff the required minimum wage in certain workweeks, even when the total compensation for the week is averaged over every "productive" and "non-productive" hour the employee worked. Such a compensation system violates California Labor Code §§ 1194, 1197, 1197.1, and 1199.

110.   DIRECTV has acted neither in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of California law. DIRECTV's unlawful conduct was willful because, among other reasons described herein, DIRECTV knew or should have known that Plaintiff was misclassified as

COMPLAINT

an independent contractor, that he was not being paid for all time worked, and that its piece-rate system(s) violates California law. Cal. Labor Code § 1194.2.

111. As a result of DIRECTV's failure to pay the minimum wage, Plaintiff has been damaged.

112. For at least the three years preceding the filing of *Addison*, Plaintiff is entitled to recover unpaid wages in amounts to be proved at trial, plus interest, liquidated damages in an amount equal to the unpaid wages plus interest, attorneys' fees, costs and penalties pursuant to California Labor Code §§ 218.6, 1194, 1194.2, and 1197.1.

113. Plaintiff requests all relief permitted by law.

## COUNT IV

### Unlawful Wage Deductions, Collection From Wages (Chargebacks)

(Cal. Labor Code §§ 221, 225)

114. Plaintiff re-alleges the allegations set forth above.

115. Under California Labor Code § 221, it is unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee.

116. As alleged herein, Plaintiff's pay was regularly subjected to "chargebacks" without Plaintiff's agreement or consent. DIRECTV's involvement in this scheme willfully and intentionally violated California Labor Code § 221.

117. As a direct and proximate result, Plaintiff has suffered damages.

118. Plaintiff is entitled to recovery of wages unlawfully deducted as well as penalties for such unlawful deductions for at least the three years preceding the filing of *Addison*.

119. Plaintiff requests relief as described below and as permitted by law.

COMPLAINT

## COUNT V

### Failure to Furnish Wage Statements

(IWC 4-2001(7)(A), Cal. Code Reg. Tit. 8, Sec. 11040(7)(A), Cal. Labor Code §§ 226, 1174, 1175)

120.   Plaintiff re-alleges the allegations set forth above.

121.   California Labor Code § 226 requires employers to provide employees, on each payday, itemized statements showing, among other things: (1) gross wages earned, (2) total hours worked by the employee, (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee, (8) the name and address of the legal entity that is the employer and, (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.

122.   DIRECTV knowingly and intentionally failed to timely deliver such statements to Plaintiff, or ensure that Plaintiff received these statements.

123.   DIRECTV willfully violated its obligations under California law, including those under California Labor Code §§ 226(a), *et seq*., by knowingly and intentionally failing to provide Plaintiff with timely and accurate wage statements.

124.   As a direct and proximate result, Plaintiff has suffered damages. Among other things, DIRECTV's failure to provide wage statements required for employees was in furtherance of DIRECTV's policy and practice of misclassifying Plaintiff as an independent contractor; DIRECTV's wage statement failures prevented and will prevent Plaintiff from determining the true amounts of wages owed to him; and caused and will cause Plaintiff extra effort and expense to determine his true wages and the identity of his employer(s).

COMPLAINT

125.   For knowingly, intentionally, and unlawfully failing to provide Plaintiff with timely and accurate wage statements in violation of California Labor Code § 226, DIRECTV violates California Labor Code §§ 1174 and 1175.

126.   Plaintiff is entitled to recovery of the greater of his actual damages or $50 for the initial pay period in which a violation occurred and $100 per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty per employee of $4,000. Plaintiff is entitled to an award of costs and reasonable attorney's fees under California Labor Code § 226(e).

127.   Plaintiff requests relief as described below and as permitted by law.

## COUNT VI

### Failure to Reimburse Necessary Business Expenses

(Cal. Labor Code § 2802, IWC 4-2001(9))

128.   Plaintiff re-alleges the allegations set forth above.

129.   Under California Labor Code § 2802, DIRECTV is required to indemnify Plaintiff for costs necessarily incurred as a direct consequence of the discharge of his duties as DIRECTV's employee.

130.   In particular, Section 9 of the applicable Wage Order requires that uniforms shall be provided and maintained by the employer, and that tools or equipment are required or necessary to perform the job shall be provided and maintained by the employer.

131.   DIRECTV requires Plaintiff to purchase—out of his own pockets—the DIRECTV uniforms, tools, and certain supplies required to perform installations, such as screws, poles, concrete, cables, fittings, zip-ties, and clips. DIRECTV also requires Plaintiff to provide—without reimbursement—personal smart phones and all maintenance and fuel for the vehicles he drives between DIRECTV customers' homes for DIRECTV's benefit.   DIRECTV's failure to

1   indemnify Plaintiff for these expenses and losses violates California Labor Code
2   §§ 2802, 226.8(2), and IWC 4-2001(9).

3   132.   DIRECTV failed to indemnify or reimburse Plaintiff for actual,
4   necessary expenses Plaintiff incurred in discharging his duties for DIRECTV.

5   133.   As a direct and proximate cause of DIRECTV's actions, Plaintiff has
6   suffered damages.

7   134.   Plaintiff is entitled to reimbursement of necessary expenditures and
8   losses, including reasonable costs and attorney's fees, plus interest from the date
9   the losses were incurred for at least the three years preceding the filing of *Addison*.

10   135.   Plaintiff requests relief as described below and as permitted by law.

11   ## COUNT VII

12   **Failure to Pay Wages Due on Resignation**

13   (Cal. Labor Code §§ 202, 203, 204)

14   136.   Plaintiff re-alleges the allegations set forth above.

15   137.   Labor Code § 204 establishes the fundamental right of all employees
16   in the State of California to be paid wages in a timely fashion for their work.

17   138.   Under California Labor Code § 202 (resignation), Plaintiff, as a
18   former DIRECTV technician, is entitled to timely payment of all wages earned and
19   unpaid within 72 hours of notice.

20   139.   Plaintiff resigned from employment with DIRECTV. To this day,
21   Plaintiff has not received the wages and other compensation rightfully earned.

22   140.   DIRECTV's failure to pay Plaintiff for every hour worked, the
23   minimum wage, proper overtime, in addition to the chargebacks and unreimbursed
24   expenses, means that DIRECTV also fails to make timely payment of the wages
25   Plaintiff earned on regular paydays, in violation of California Labor Code § 204,
26   and timely payment of the wages Plaintiff earned when he stopped working for

27
28

25

1   DIRECTV due to resignation, in violation of California Labor Code §§ 202, and/or
2   203.

3        141.   DIRECTV willfully refused to pay Plaintiff all wages earned and
4   unpaid at the time of resignation or within 72 hours thereafter in violation of its
5   obligations under Labor Code §§ 202, and continues to refuse to pay Plaintiff all
6   wages earned, including overtime compensation.

7        142.   DIRECTV's compensation system clearly violates California's Labor
8   Law such that any belief by DIRECTV that wages were not owed to Plaintiff
9   would be objectively unreasonable and in bad faith. Despite the ability to make
10  such payment, DIRECTV maintained customs, policies, practices, procedures, and
11  routines incompatible with the requirements of California Labor Code.

12       143.   As a direct and proximate cause of DIRECTV's actions, Plaintiff has
13  suffered damages.

14       144.   Plaintiff is entitled to restitution and statutory penalties (continuation
15  wages) pursuant to California Labor Code § 203, prejudgment interest on unpaid
16  and continuation wages pursuant to California Labor Code § 218.6 and/or
17  California Civil Code § 3287(a).

18       145.   Plaintiff requests relief as described below and as permitted by law.

19  **COUNT VIII**

20  **Unfair Business Practices**

21  (Cal. Bus. & Prof. Code § 17200, *et seq.*)

22       146.   Plaintiff re-alleges the allegations set forth above.

23       147.   California's Business and Professions Code § 17200, *et seq.* prohibits
24  acts of unfair competition, which includes any "unlawful business act or practice."

25       148.   The policies, acts, and practices described in this Complaint were and
26  are an unlawful business act or practice because DIRECTV's (1) failure to pay
27  wages due, (2) failure to pay overtime wages at the lawful rate, (3) failure to

28

provide accurate and timely wage statements (4) failure to reimburse business expenses and (5) imposing unlawful deductions violate applicable California Labor Code sections, including but not limited to California Labor Code §§ 201, 202, 203, 204, 210, 223, 226, 226.7, 226.8, 510, 512, 1174, 1194, 1197, 2802, and other provisions of California common and/or statutory law. Plaintiff reserves the right to allege additional statutory and common law violations by DIRECTV.

149.   These practices were and are unfair and resulted in injury to Plaintiff and the general public in that DIRECTV's unlawful acts result in the loss to Plaintiff of wages he is rightfully owed and harm to competition in the State of California thereby decreasing consumer choice.

150.   The policies acts and practices described in this Complaint were and are an unlawful business act or practice because any justification for DIRECTV's illegal and wrongful conduct were and are vastly outweighed by the harm such conduct caused Plaintiff and the members of the general public.

151.   As a direct and proximate result of DIRECTV's unfair business practices, DIRECTV has reaped unfair benefits and illegal profits to which it is not rightfully entitled that rightfully belongs to Plaintiff, and an unfair competitive advantage through retaining money that is due its employees pursuant to state law, all at the expense of Plaintiff and members of the public.

152.   DIRECTV's unlawful business practices are likely to continue.

153.   Plaintiff is entitled to seek preliminary and permanent injunctive relief, including but not limited to orders that DIRECTV:

(a)   Account for and restore to Plaintiff the compensation unlawfully withheld from him for the four years preceding the filing of his California claims in *Addison*;

1    (b) Identify, locate, and make restitution to affected members of the general

2  public all funds and the value of all things acquired by the acts of unfair

3  competition alleged herein,

4    (c) Cease its unlawful practice of misclassifying technicians as independent

5  contractors and thus unlawfully denying them wages to which they are entitled

6  under the law,

7    (d) Disgorge all illegally obtained monies from failing to pay taxes, state

8  disability insurance premiums, and unemployment taxes obtained by way of

9  DIRECTV's violation of California Business and Professions Code § 17200, *et*

10  *seq.*, for the four years preceding the filing of this Class Action Complaint; and

11    (e) All additional orders necessary under California Business and

12  Professions Code § 17203.

13  154.    Plaintiff requests relief as described below and as permitted by law.

14

15    **WHEREFORE**, Plaintiff requests a jury trial as to all issues so triable, and

16  pray the Court enter judgment for Plaintiff and:

17        a.  Enter judgment for Plaintiff as to the violations alleged herein;

18        b.  Award general and compensatory damages;

19        c.  Award damages and/or penalties for unpaid wages and unpaid

20            overtime pursuant to 29 U.S.C. § 216(b) and California Labor Code

21            §§ 1194, 1197, 1197.1, 204, 223, and 512.

22        d.  Award damages for deductions pursuant to California Labor Code

23            §221;

24        e.  Award damages and/or penalties pursuant to California Labor Code

25            §226(e);

26        f.  Award damages for unreimbursed business expenses as permitted

27            under California Labor Code § 2802 and applicable Wage Orders;

28

COMPLAINT

g. Award damages and/or penalties for unpaid wages under California Labor Code § 202 and 203;

h. Issue a permanent injunction pursuant to Business and Professions Code § 17203 restraining and enjoining DIRECTV from continuing the unfair practices set forth above;

i. Award restitution under Business and Professions Code § 17203;

j. Impose penalties and amounts provided in California Labor Code §§ 203(a), 226(e), and other provisions;

k. Award liquidated damages under 29 U.S.C. § 216(b) and California Labor Code § 1194.2;

l. Award pre-judgment interest;

m. Award reasonable attorney's fees under the FLSA and California Labor Code;

n. Award costs of suit under the FLSA and California Labor Code; and

o. Grant any further relief that the Court may deem just and equitable.

DATED:  February 26, 2016          Respectfully submitted,

**STUEVE SIEGEL HANSON LLP**

By: s/Jason Hartley
Jason Hartley, CA Bar No. 192514
500 West C Street, Suite 1750
San Diego, California 92101
Telephone: 619-400-5822
Facsimile: 619-400-5832
Email: hartley@stuevesiegel.com

J. Toji Calabro, CA Bar No. 239950
(*admission forthcoming*)
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone: 816-714-7100
Facsimile:  816-714-7101
Email:  calabro@stuevesiegel.com

*Attorneys for Plaintiff*

COMPLAINT